[No. 32864-6-I.    Division One.    February 7, 1994.]

EUGENE MAYNARD, ET AL, *Appellants,* v. SISTERS
OF PROVIDENCE, *Respondent.*

*Grant K. Weed* and *Keithly, Weed & Graafstra,* for appellants.

*Karen J. Kvale* and *Williams, Kastner & Gibbs,* for respondent.

FORREST, J.[*] — Eugene Maynard appeals the trial court's order granting Sisters of Providence's motion for summary judgment on the grounds that the trial court erred in finding as a matter of law that Sisters of Providence had discharged its duty of reasonable care. We reverse and remand for trial.

On the afternoon of February 16, 1990, Eugene Maynard (Maynard) took his wife, Verna Maynard, to Providence Hospital (Providence) in Everett, Washington. She was found to be suffering from a serious liver illness and was scheduled for surgery the next day. Maynard observed some snow on the ground at this time. During the night, after Maynard left, it snowed "quite heavily, three or four inches on the roadway".

Maynard returned the following morning at 6 a.m. and, because of the slushy conditions, parked in the main visitors parking lot. As he visited with his wife, he noticed it was snowing again. At 1:15 p.m. he left Providence. The parking lot had not been cleared of ice and snow, nor did he notice Providence taking any measures to clear the ice and snow. Earlier, however, Maynard had seen sanding taking place in the lot next to the hospital building reserved for doctors and hospital staff.

As he left the main entrance of the hospital, Maynard noticed the slush had turned to ice on the lot, a condition which worsened as he neared the visitors lot where he was

---

[*]Judge Marshall Forrest is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

parked. Once in his car, Maynard found he could not get the car out of the parking space because of the ice. A man in a truck with chains was also unable to move Maynard's car. Maynard decided to return to the hospital to get sand for traction. On his way back, Maynard offered to help push another's car. While walking toward the rear of this other vehicle, Maynard fell and sustained a knee injury.

An aid car arrived from the Everett Fire Department soon afterward. Scott Dunn, who arrived in the aid car, stated that, even with chains, he and his partner were unable to drive the car up the hill to treat Maynard because it was too slippery. Further, Dunn stated that when his partner stepped out of the car, he immediately slipped and fell down.

Maynard filed suit alleging Providence was negligent in allowing an accumulation of ice and snow, failing to maintain a safe common area for a business invitee, and failing to warn invitees of a known hazard. Providence moved for summary judgment, which the trial court granted. Maynard subsequently filed a motion for reconsideration using as additional evidence the declaration of Dunn and weather records from the City of Everett. The trial court denied the motion for reconsideration. Maynard filed a timely appeal to this court.

I

In reviewing a summary judgment the appellate court engages in the same inquiry as the trial court.[1] The court must affirm the summary judgment

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

*Atherton Condominium Apartment Owners Ass'n Bd. of Directors v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990). Maynard is entitled to all reasonable inferences arising from the facts in determining whether there is a factual issue.

---

[1]*McChord Credit Union v. Parrish*, 61 Wn. App. 8, 11, 809 P.2d 759 (1991).

## II

As a preliminary matter, Providence argues that, because Maynard's brief only assigns error to the summary judgment order and not to the motion for reconsideration, the additional evidence of Everett's weather records and Dunn's declaration should not be reviewed by this court under RAP 10.3(g).[2]

■ This court may review Maynard's additional evidence given that appellate procedural rules are to be interpreted liberally.[3] Providence was aware of the issues in dispute and in its brief analyzes the challenged evidence thereby minimizing any prejudice resulting from this court's review. We treat the supplemental materials as properly before us.

## III

■ We look to the Restatement (Second) of Torts § 343 (1965) for guidance in reviewing problems of landowner liability. *Egede-Nissen v. Crystal Mt., Inc.*, 93 Wn.2d 127, 132, 606 P.2d 1214 (1980). This division has recently applied the Restatement in the context of a fall in an icy parking lot. *Ford v. Red Lion Inns*, 67 Wn. App. 766, 840 P.2d 198, *review denied*, 120 Wn.2d 1029 (1993). Here, the dangerous condition of the parking lot was obvious and known to Maynard. He had walked across it, his car had no traction and could not move even with the assistance of a truck with chains. Accordingly, the applicable Restatement rule is:

---

[2]RAP 10.3(g) reads in relevant part that "[t]he appellate court will only review a claimed error which is included in an assignment of error or clearly disclosed in the associated issue pertaining thereto." Further, Providence argues that the Superior Court rejected this evidence as untimely. However, in its order denying motion for reconsideration, the Superior Court expressly states that it reviewed the additional evidence in denying reconsideration.

[3]"These rules will be liberally interpreted to promote justice and facilitate the decision of cases on the merits. Cases and issues will not be determined on the basis of compliance or noncompliance with these rules except in compelling circumstances where justice demands, subject to the restrictions in rule 18.8(b)." RAP 1.2(a); *see also Wolf v. Boeing Co.*, 61 Wn. App. 316, 322 n.5, 810 P.2d 943 ("A technical violation of the rules will not ordinarily bar appellate review where justice is to be served by such review."), *review denied*, 117 Wn.2d 1020 (1991).

(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, *unless the possessor should anticipate the harm despite such knowledge or obviousness.*

(Italics ours.) Restatement (Second) of Torts § 343A(1) (1965). As to when the possessor should anticipate the harm despite its being obvious, comment *f* of this subsection states that a landowner should expect a harm to an invitee where:

the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk. In such cases the fact that the danger is known, or is obvious, is important in determining whether the invitee is to be charged with contributory negligence, or assumption of risk. . . . *It is not, however, conclusive in determining the duty of the possessor, or whether he has acted reasonably under the circumstances.*

(Italics ours.) Restatement (Second) of Torts § 343A(1), comment *f* (1965). *See also Jarr v. Seeco Constr. Co.*, 35 Wn. App. 324, 327, 666 P.2d 392 (1983) ("[t]here are some situations in which there is a duty to protect an invitee against even known dangers, where the possessor should anticipate harm to the invitee notwithstanding such knowledge.") (quoting Restatement (Second) of Torts § 343, comment *b*). In *Ford v. Red Lion Inns*, 67 Wn. App. 766, 840 P.2d 198, *review denied*, 120 Wn.2d 1029 (1993), this court held that the Restatement's rules as to a landowner's duty to an invitee applied to the icy parking lot of a motel and rejected the reasoning of *Schaeffer v. Woodhead*, 63 Wn. App. 627, 821 P.2d 75 (1991), whose court applied the "natural accumulations" rule.[4] We agree and hold that a fall on snow or ice is analyzed under the general rules of a landowner's duty to invitees.

Providence urges that since the facts are similar and since the *Ford* court affirmed summary judgment dismissing the

---

[4]We agree. *Schaeffer* does not discuss the Restatement (Second) of Torts and does not discuss *Geise v. Lee*, 84 Wn.2d 866, 529 P.2d 1054 (1975) which, although addressing the issue in the landlord-tenant context, rejected the natural accumulations rule and adopted a traditional negligence analysis. *See also Sorenson v. Uddenberg, Inc.*, 65 Wn. App. 474, 828 P.2d 650 (1992).

plaintiff's complaint, that we must do likewise. We disagree. In *Ford* an invitee was injured after falling on ice in a parking lot of a Red Lion Inn. Prior to the accident, he had noticed the presence of ice and snow in parking his own car. When he stayed in the lot to help his employer remove barricades in spite of being told he was free to go home, he slipped, fell and was injured. The appellate court upheld the trial court's ruling that because he was aware of the icy conditions and could have avoided the risk by leaving and because he had presented insufficient evidence as to the existence of an unreasonable risk, or Red Lion's failure to exercise reasonable care, he failed to state a cause of action. We find the facts are distinguishable from those before us.

In this case, Everett's weather records show that low temperatures and precipitation had been occurring for the preceding 4 days. A permissible inference would be that Providence could foresee that ice and snow were likely to be present and that what was slush when Maynard arrived could turn to ice. At the minimum, the conditions warranted investigation of the parking lots. Further, Maynard's testimony is unrebutted that the staff's parking lot was sanded between 2 and 3 hours before he left the hospital the day of his accident. Providence was plainly aware of the hazardous condition on the day in question and, anticipating some form of harm, exercised precautions with respect to the staff parking lot but not as to the visitors lot. This also establishes that Providence had the capacity to take some remedial measures. Additionally, evidence of the aid car's inability to reach Maynard after he fell, and Dunn's declaration as to the treacherousness of the conditions immediately after the accident, which led to his partner's fall on the ice, support Maynard's contention that the ice presented an unreasonable risk. Thus, unlike the plaintiff in *Ford*, Maynard has provided evidence as to the unreasonableness of the risk and Providence's lack of exercise of reasonable care with regard to the visitors parking lots.

Providence asserts that a significant similarity between *Ford* and this case is that, like *Ford*, Maynard chose to enter

the lot and, once there, to linger unnecessarily. Providence argues that Maynard was aware of the conditions and should have protected himself accordingly. As noted in comment *f* to section 343 of the Restatement (Second) of Torts, a landowner should expect harm where there is reason to believe the invitee will proceed to encounter the known or obvious danger because to a reasonable person in his or her position the advantages of doing so would outweigh the apparent risk. Here, the hospital should reasonably anticipate that its visitors will want to go home. Other than trying to get his car mobile, Maynard's options were essentially limited to abandoning his car and walking, calling a taxi or remaining at the hospital until conditions changed. Under these circumstances, a reasonable person might well confront the risk of traversing the parking lot to obtain sand. Maynard's digression to try and assist another driver does not ipso facto relieve Providence of its duty, but is a consideration for a jury in determining comparative negligence. We find the facts clearly distinguishable from *Ford*.

For purposes of summary judgment, we are satisfied that Maynard raises material issues of fact as to all the elements of his claim; the existence of an unreasonable risk, that Providence knew or should have known of the risk, that Providence should have anticipated that invitees using its parking lot would attempt to remove their cars to go home, and that Providence failed to take any remedial measures. Landowners do not become insurers of the safety of those invitees using their parking lots, but they are not absolved of responsibility merely because the injury is caused by accumulations of ice or snow. A jury must determine whether the defendant was negligent and, if so, the plaintiff's comparative fault in light of all the existing circumstances.[5]

---

[5]If a possessor of land undertakes to clear or sand a parking area, general tort principles would impose liability if he does it negligently. One purpose of tort law is to reduce injuries. It would be poor policy to protect those like Providence who do nothing and expose those who try to reduce the risk of liability.

Reversed and remanded for trial.

WEBSTER, C.J., and KENNEDY, J., concur.